<hr/>

HUNTLEY, Receiver &c. of the Cattaraugus County Mutual Insurance Company, *vs.* BEECHER.

The charter of a mutual insurance company provided that when any property insured by the company should be alienated, the policy should thereupon be void, and be surrendered to the directors, to be canceled; and that upon such surrender the assured should be entitled to receive his deposit note, upon the payment of his proportion of all losses and expenses that had occurred previously. The by-laws contained a provision that whenever a party insured should mortgage the property, his policy should be void, unless he should give notice thereof to the company. At an annual meeting of the members of the company, it was resolved that when an insured had alienated his property before loss sustained, his premium note should not be assessed, although he had not surrendered his policy.

*Held* that, independent of the resolution, passed by the company, a person insured who had alienated the insured property by mortgage and deed, without giving notice to the company of such alienation, or surrendering his policy, remained liable, upon his premium note, for losses occurring subsequent to the alienation. But that by the resolution the company waived a compliance by its members with the provisions of the charter relating to a surrender of the policy, &c., and in effect declared that it would dispense with the formality of a surrender, when there were no losses to be paid, and the assured had aliened the insured property; and that it would itself take notice of the alienation, and would make no assessment upon the premium note, to pay future losses.

Accordingly *held*, that the receiver of the company could not maintain an action

Huntley *v.* Beecher.

to recover an assessment upon a premium note thus situated, made for the purpose of paying losses occurring since the alienation of the property.

*Held, also,* that the resolution was not void, as being in conflict with the provision contained in the charter of the company.

The fact that the charter of an insurance company expires, by its own limitation, within the period during which a policy is by its terms to continue, will not avoid the policy, and discharge the insured from his liability upon his premium note. The policy is valid for the unexpired term of the charter.

Nor will the insured be entitled to any rebate, or deduction, from the amount of an assessment, or from the amount of the premium note, on account of the fact that the charter of the company was to expire, and did expire, prior to the expiration of the period during which the policy, by its terms, was to continue.

CASE agreed upon, without action, pursuant to section 372 of the code. The Cattaraugus County Mutual Insurance Company was incorporated in March, 1837. By the terms of the act it was to take effect immediately, and to continue in force for the term of twenty years. In June, 1837, a set of by-laws was adopted, in which was contained a provision, that " Whenever any one, hereafter insured, shall alienate conditionally by mortgage, his policy shall be void, unless he shall make a representation thereof, in writing, to the directors, stating the amount and to whom mortgaged, who shall have the power to assent to said mortgage or to cancel said policy." At an annual meeting of the members of the company, held in June, 1843, it was " Resolved, that when an insured has alienated his property insured before any loss has been sustained, his premium note shall not be assessed, although he has not surrendered his policy." This resolution was recorded in the book of minutes of the proceedings of the company kept by its clerk. The defendant, January 5, 1853, was the owner in fee of a house and lot and barn and lot in Ellicottville; and on that day he made application to the company in proper form for an insurance of the house and barn, and on the 8th day of January, 1853, the company issued to him a policy of insurance upon the house and barn, for five years. He, at the same time, gave the company his note for $165, in consideration of the policy, by which he promised

to pay the sum named, " in such portion and at such time or times as the directors of said company may, agreeably to their charter and by-laws, require." On the 1st day of July, 1854, Beecher mortgaged the house and lot and barn and lot to one Aiken, in fee, to secure the payment of $500. The company never assented to the mortgage, nor was the company notified of the fact of its execution or existence. On the 10th day of September, 1855, Beecher sold and conveyed by a deed in fee simple, with warranty, the house and barn and lots to Eleazer Harman. No notice of this sale and conveyance was ever given to the company or its directors, and there was never any ratification of, or assent to, the sale and conveyance, by the company. Nor was the policy confirmed to Harman. At that time there was no assessment due on the note given by Beecher. The policy, by its terms, was to continue and remain in full force for and during the term of five years from its date, Jan. 8, 1853. The premium note was given for the amount usually charged on five year policies, for the class of risks in which the house and barn were classed. And at that time Beecher supposed, and labored under the mistaken impression and belief, that the five years specified in the policy for its continuance would expire prior to the expiration of the twenty years specified in the act of incorporation for the continuance of the act. He supposed and believed he was getting a good policy for five years. The note given by Beecher had been assessed for losses, in April, 1856, and January, 1857, by the receiver, at the rate of twenty three cents and forty-four one hundredths of a cent on the dollar; making no allowance for the fact that the charter of the company would and did expire within five years of the date of the policy. The amount assessed was $38.68. Beecher refused to pay any part of the amount so assessed.

The questions propounded in the case were, (1.) Did the execution of the mortgage from Beecher to Aiken work a forfeiture of the policy, and discharge Beecher from his liability, on said premium note, for the losses accruing to the company

in April, 1856, and January, 1857? (2.) Did the alienation by Beecher to Harman of the property insured have that effect? (3.) Does the fact that the charter of the company would and did expire by its own limitation, within the five years during which the policy was by its terms to continue, avoid the policy, and discharge Beecher from all and every liability on or by virtue of the premium note? (4.) Is Beecher entitled to any rebate or deduction from the amount of the assessment, or from the amount of the premium note, on account of the fact that the charter would and did expire prior to the expiration of the period during which said policy was by its terms to continue?

*A. G. Rice,* for the plaintiff, cited *Neely* v. *Onondaga Mutual Ins. Co.,* (7 *Hill,* 49,) and *Hyde* v. *Lynde,* (4 *Comst.* 387.)

*Bolles & Crosby,* for the defendant.

*By the Court,* MARVIN, J. It is provided in the charter that "when any property insured with this corporation shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors of the said company to be canceled, and upon such surrender, the assured shall be entitled to receive his deposit note, upon the payment of his proportion of all losses and expenses that have accrued prior to such surrender." In *Smith* v. *The Saratoga Mutual Fire Insurance Company,* (3 *Hill,* 508,) by the terms of the policy it was to become void if it was assigned without the consent of the company in writing. The policy was assigned and a loss happened, and it was held that the policy was void and no action would lie upon it. In *Neely* v. *The Onondaga County Mutual Ins. Co.,* (7 *Hill,* 49,) the charter of the defendant contained the same provisions above quoted. The action was upon the policy. The assured had aliened and sold the insured property prior to the loss, and the company, with notice of such alienation, assessed his premium

note for losses that had accrued after the alienation, and collected such assessment. The court held that there could be no recovery; that when the loss happened, the policy was a mere nullity. It was also held that although the policy became void by the alienation of the property insured; it did not follow that the deposit note was also void; that until the assured surrendered his policy and paid his proportion of all losses which accrued prior to such surrender, the deposit note remained obligatory upon him. In *Hyde, receiver,* v. *Lynde,* (4 *Comst.* 387,) the charter of the Chenango Mutual Insurance Company contained the same provisions as above cited. The assured had aliened the insured property, and had surrendered his policy, which had been accepted by the company, and the note was canceled and surrendered. It was held that he was no longer liable upon his note, for losses, though they happened prior to the surrender of the policy, &c., in the absence of all fraud.

The opinion in the case in 7 *Hill* is in point, showing that though the policy is avoided by the alienation, the assured remains liable upon his note, for losses, after the alienation, until he surrenders the policy to be canceled, when he is entitled to his deposit note, upon the payment of all losses and expenses that have accrued prior to the surrender. According to this case, Beecher remained liable upon his note, for losses accruing subsequent to the alienation by mortgage to Aiken, and by deed to Harman; unless the resolution adopted at the annual meeting of the members of the company, held June 16th, 1843, affects the question.

By that resolution it was declared "That when an insured has aliened his property insured, before any loss has been sustained, his premium note shall not be assessed, although he has not surrendered his policy." The case does not show that any loss had been sustained when Beecher aliened the property insured. The assessment made by the receiver is for losses accruing after the alienation. Beecher therefore comes within the very terms of the resolution, and by that the com-

pany declared that it would not assess his premium note, although he should not surrender his policy. The company, in effect, declared that it would dispense with the formality of a surrender of the policy, when there had been no losses to be paid, and the assured had aliened the insured property. That it would, itself, take notice of the alienation, and would make no assessment upon the deposit note, for future losses.

It seems to me that the company was bound by this resolution, and that it thereby waived a compliance, by any and all of its members coming within the terms of the resolution, with the provisions of the charter relating to a surrender of the policy, &c. The counsel for the receiver takes the position that the resolution is in direct conflict with the statute, and that it is therefore void; and cites *Hyde* v. *Lynde*, (4 *Comst.* 387.) We have seen what that case was. I am unable to extract from it any thing in point to sustain the position of the counsel. In that case the policy was surrendered, and the note was canceled and surrendered to the assured; and the court held that, in the absence of fraud, no recovery could be had against the assured to contribute to losses which had then accrued and were unsettled. It seems to me that this case is rather authority to show that the company had power to dispense with a strict compliance with the provisions of the act. The decision was put upon the ground that whether losses, &c. &c. had accrued, &c., were matters to be adjusted between the party surrendering the policy and the company, before the note should be given up; and that when they came to an agreement, and the policy and the note were surrendered, the individual ceased to be a member of the company, and all right to make assessments or calls upon him or upon the note, was at an end. The case is not in point to show that the resolution in this case was void. Upon general principles, I see no objection to the resolution. By the charter the assured had a right to surrender the policy and to demand his deposit note, upon paying his proportion of any losses, &c. If no losses or expenses had accrued, he had a right to

demand his note without paying any thing. If the members composing the company see fit to say that in case any one of them shall alien his insured property, no assessment shall be made upon his premium note for any subsequent losses, though he does not surrender his void policy, who is injured thereby? After adopting such a resolution, saying, in effect, to a member, you need not surrender your policy to be canceled, your note shall not be assessed, it would be a fraud to assess the note and attempt to collect the assessment; and the company should be estopped by its own declarations from doing so.

In my opinion the plaintiff, as receiver, has no claim in this case upon the defendant: Though the charter of the company was to expire by its own limits nearly a year before the expiration of the five years mentioned in the policy, I think the contract between the parties was not void. The policy was valid for the unexpired term of the charter. It is stated in the case that Beecher, at the time he executed the note and accepted the policy, supposed, and labored under the mistaken belief, that the five years specified in the policy for its continuance, would expire prior to the expiration of the charter, and that he was getting a good insurance for five years. These facts will not change the rights of the parties. There is no question of fraud in the case. The legal presumption is, that Beecher knew what the law was, and that he contracted with reference to the law as it actually existed. This presumption is conclusive upon the parties, and they cannot be heard to allege to the contrary. (1 *Story's Eq.* § 111 *to* § 139. *Broom's Legal Maxims*, 190. Maxim *"Ignorantia juris non excusat."* 8 *Pet. R.* 287.)

The corporation could not extend its existence by entering into contracts to be performed after the expiration of its charter. (*Mumma* v. *The Potomac Company*, 8 *Pet. R.* 287.) Upon the dissolution or civil death of a corporation, at common law, all its real estate unsold reverts back to the original grantor or his heirs; the debts due to and from the corporation are extinguished, and all the personal estate of the cor-

poration vests in the people. (*Grant on Corp.* 303, 304. 2 *Kent's Com.* 307. *Angel & Ames on Corp.* 128, 667.)

In this state, these consequences are guarded against by statute. (1 *R. S.* 600, § 9.) And upon the dissolution of the corporation, unless other persons shall be appointed, the directors or managers of the affairs of the corporation at the time of its dissolution, become trustees of the stockholders; and they have power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys and other property that shall remain after the payment of debts and necessary expenses.

Any one contracting with a corporation, contracts with reference to the powers of the corporation, and the laws of the state applicable to it. (*Angel & Ames on Corp.* 129.) A dissolved corporation may be received, or the charter may be extended by a legislative act. When its existence is continued by the revival of its charter, it retains its property, and remains liable upon its obligations. (*Id.* 668. *Grant on Corp.* 304.) Had the Cattaraugus County Mutual Insurance Company not become insolvent, and the legislature had renewed its charter for another period of twenty years, would not the policy issued to the defendant Beecher have been good for the whole five years? No reason occurs to me why it would not have been valid. If so, this is another reason why the contract between him and the corporation should not be held void *ab initio*, as the parties may have contemplated that the charter would be renewed. But aside from this suggestion, I am satisfied that the policy was good and valid for the time the company by its charter was to exist.

I am also of the opinion, that Beecher was not entitled to any "rebate or deduction" from the amount of the assessment, or from the amount of the premium note, on account of the fact that the charter was to expire, and did expire, prior to the expiration of the period during which the policy by its terms was to continue.

If, in fact, the company did make a difference in the amount

of the premium note, depending upon the time the policy was to continue, it may be that some injustice was done to Beecher. The case however does not show such fact; and if it did, in my opinion no abatement could be had when an assessment for losses should be made. The answer to such a position would be the contract made under the charter. By it the directors had authority to determine the rates of insurance, the sum to be insured, and the sum to be deposited for any insurance, and the assured was to deposit his note for such sum as the directors should determine, and immediately pay a part of it not exceeding five per cent. The sum to be paid for losses by such member, was to be in proportion to the original amount of the deposit note. (*Sections 5, 6 and* 10 *of the Charter.*) There was no authority for making any rebate or deductions.

: There must be a judgment in favor of the defendant Beecher for costs.

[ERIE GENERAL TERM, November 22, 1859. *Greene, Marvin* and *Davis,* Justices.]