## Case No. 2,403.

### CAREY v. NAGLE.

[2 Abb. U. S. 156;[1] 2 Biss. 244; 9 Am. Law Reg. (N. S.) 362; 3 Am. Law T. Rep. U. S. Cts. 131; 4 West. Jur. 351; 2 Chi. Leg. News, 293.]

District Court, D. Wisconsin. Feb. Term, 1870.

MUTUAL INSURANCE—PREMIUM NOTES—ACTION ON —DEFENSE OF BANKRUPTCY.

1. By a supplement to its charter, a mutual insurance company was authorized to insure "for a specific rate of premium to be paid in cash, in the same manner as insurance companies" not mutual "are accustomed to do." The object of the supplement was to enable the company to issue two classes of policies, one on the mutual, and the other on the non-mutual plan, the premiums on the latter to be paid in cash. *Held*, that the company might accept a note for such premium, instead of cash; the taking it being a mere extension of the time of payment, and none the less a payment in cash.

2. The bankruptcy of the company is no defense to an action by the assignee of a note given for the premium on a policy of insurance.

At law. Trial of an action upon a promissory note.

This was an action by the assignee in bankruptcy of the Milwaukee Insurance Co., to recover the amount of a note made by the defendants to the company for a policy [No. 25,502, dated May 28, 1868][2] for two hundred and forty dollars, payable in sums of sixty dollars on the first day of May annually for four years, without interest until due, and in case default should be made in the payment of any of the installments, then the whole to become due. The company was incorporated and did business for several years as a mutual insurance company, issuing policies and taking back notes, such policy holders being members of the company. By the act to amend the act to incorporate the company, it was provided that "the company shall have power in their discretion to make any and all insurance which by law they are or may be authorized to make, to any person or persons with whom they may agree to that effect, for a specific rate of premium to be paid in cash, in the same manner as insurance companies other than mutual insurance companies are accustomed to do. And in all such cases the insured shall not become members of the

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]
[2] [From 2 Biss. 244.]

company, nor in any wise entitled to any share of the profits, premiums, or earnings, nor in any wise liable for the losses, debts, or liabilities of the said company, and all premiums received for such insurance shall be passed to the general credit of the company. and all losses growing out of said special policies shall be paid in like manner as losses under the ordinary policies of the company."

Mann & Cotzhausen, for plaintiff.
Butler & Winkler, for defendant.

MILLER, District Judge. A policy was issued for four years, under the amendment to the charter of the company, upon receipt of the note in suit for the payment of the annual premium. It is contended by the defendant's counsel that the premiums should be paid in cash simultaneously with the delivery of the policy, and that the company could not accept a note payable at a future time. The object of the amendment to the charter was to invest in the company the additional power to issue policies as a stock company for a specific rate of premium to be paid in cash. Insurance under this act may be made in the same manner as by other insurance companies not mutual. Policy holders stand in a different relation to the company from those under the mutual system. The insured under the amended charter are not members of the company, nor entitled to a share of the profits, premiums, or earnings of the company, nor subject to losses. I do not think the act requires premiums to be paid [in cash][a] simultaneously with delivery and acceptance of policies. The act authorizes the company to make insurance to any person for a specific rate of premium to be paid in cash, in the same manner as stock companies. The company was not prohibited from extending the time of payment of premiums in cash. The company could transact business in this respect, as other companies, and make its agreement with the insured as to the time of payment of premiums in cash. The note was a mere regulation of the time of payment, for the accommodation of the defendants. The premium was to be paid in cash, but the time of payment was extended. There is no statute law prohibiting such extension. The policy issued to these defendants imports a settlement of the premiums to the satisfaction of the company simultaneously with its execution and delivery, and binds the company in case of loss by fire, even if the note had not been given, or if the insured should become insolvent and unable to pay the premium. It is an every-day practice with stock companies to issue policies upon credit, containing exemption from liability on non-payment of the premiums.

A provision in a policy duly executed, that no insurance, whether original or continued, should be binding until the actual payment of the premium, and the written acknowledgment thereof, does not invalidate a subsequent contract by parol, to renew such insurance for a premium not paid at the time the risk attaches, but postponed to a future day. Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305. In New York Firemen Ins. Co. v. Sturges, 2 Cow. 664, notes were received for premiums. See, also, Commercial Mut. Ins. Co. v. Union Mut. Ins. Co., 19 How. [60 U. S.] 318; Furniss v. Gilchrist, 1 Sandf. 53; McIntire v. Preston, 5 Gilman, 48; Hamilton v. Lycoming Mut. Ins. Co., 5 Barr [5 Pa. St.] 339. The contract between the insurer and the insured is mutual, but independent, and failure of one party literally to comply on his part does not exempt the other from liability. I am satisfied that under the amended charter, the company had lawful authority to issue policies, upon a simultaneous payment of the premiums in cash, or upon an extension of the time of payment by taking a note, or even without a note or security.

It is not necessary to consider the question whether the defendants are estopped from making this defense. The note in suit is a portion of the capital of the company for the payment of losses by fire. If defendants' property, covered by the policy, had been damaged or destroyed by fire, the company was bound by its contract of insurance to pay the loss. And in case of distribution of assets among creditors under the bankrupt act, defendants would be entitled to their pro rata share. The note, being accepted by the company in lieu of cash paid at the date of the policy, is recoverable as so much assets, and defendants are in no worse condition by giving the note in lieu of paying the premium. Hone v. Boyd, 1 Sandf. 481; White v. Height, 16 N. Y. 310; Sterling v. Mercantile Mut. Ins. Co., 32 Pa. St. 75; Sands v. Hill, 42 Barb. 651; Huntley v. Beecher, 30 Barb. 580; Alliance Ins. Co. v. Swift, 10 Cush. 433; Huntley v. Merrill, 32 Barb. 626; Clark v. Middleton, 19 Mo. 53. Upon the same principle, the insolvency of a corporation is no ground for restraining collection of subscriptions for stock. Dill v. Wabash Val. R. Co., 21 Ill. 91. And stockholders are liable on their subscription to the stock of an insolvent company. Ogilvie v. Knox Ins. Co., 22 How. [63 U. S.] 380. Judgment for plaintiff.

NOTE [from original report in 2 Biss. 244]. That the insolvency of the company is no defense to a premium note, has the weight of the following authority: Lester v. Webb, 5 Allen, 569. Nor does the insolvency of the company entitle the insured to the cancellation of his premium note by surrendering his policy and making a pro rata payment. Hone v. Boyd, 1 Sandf. 481.