HERGET, Judge.
This is a declaratory judgment action brought by the Public Housing Administration seeking a judicial interpretation of those portions of a contract between it and Housing Authority of the City of Bogalusa, requiring that the Housing Authority insure its low-rent housing projects for fire and extended coverage with the lowest responsible bidder.
Public Housing Administration, which will be hereinafter referred to as “Administration”, is an agency of the United States. The Housing Authority of the City of Bogalusa, referred to hereinafter as “Housing Authority” is a public corporation created and established pursuant to LSA-R.S. 40:381 et seq., and is authorized to borrow money or accept contributions from the Administration for the purpose of building and maintaining low-rent housing projects in the City of Bogalusa.
The Administration entered into an “Annual Contributions Contract” with Housing Authority for the development and administration of two low-rent housing projects in the City of Bogalusa. Under the Annual Contributions Contract, Housing Authority was required to insure its low-rent housing projects against the losses covered by the standard Louisiana fire and extended coverage insurance policies, and was obligated to advertise for competitive bids and to award the insurance to the “lowest responsible bidder.”
Plousing Authority advertised for bids for fire and extended coverage insurance and Liberty Mutual Fire Insurance Company, hereinafter referred to as “Liberty”, submitted a bid which was stipulated to be the lowest responsible bid (providing only that Housing Authority might legally insure with a mutual insurance company under a single-premium, non-assessable policy). Housing Authority has refused to accept the bid of Liberty on the ground it believes it is forbidden by law, and particularly Article 4, Section 12 of the Louisiana Constitution of 1921, LSA, to enter into an insurance contract with a company organized on the mutual plan.
Reliance Insurance Company, a stock company hereinafter referred to as “Reliance”, submitted a bid on the same date as did Liberty, and it was stipulated that such bid was the lowest responsible bid received in the event Housing Authority may not legally insure with any mutual insurance company.
By supplemental petition Liberty and Reliance were joined as parties defendant, and by answer Housing Authority and Reliance pleaded the lowest responsible legally acceptable bid for the insurance was Reliance because the Constitution prohibits Housing Authority from insuring in a mutual insurance company. Liberty answered, pleading that the Court declare it the lowest legally responsible bidder for providing the insurance coverage, and that the Constitution does not prohibit the State or its political subdivisions, including Housing Authority, from purchasing insurance from a mutual insurance company. The Attorney General of Louisiana and a large number of independent insurance agents intervened as defendants.
Exceptions of no cause or right of action were filed on behalf of Reliance and Housing Authority, and by agreement of counsel the Court referred those exceptions to the merits.
Upon the matter being submitted on the merits, the Trial Judge .rendered judgment in favor of Administration and defendant, Liberty, holding that the Louisiana Constitution does not prohibit the State or any political corporation thereof from securing insurance coverage under fixed premium, non-assessable policies from mutual insurance companies and Liberty was the lowest responsible bidder for providing fire and extended coverage insurance on Housing Authority’s low-rent housing projects. From this judgment, *873 Housing Authority, Reliance and inter-venors appealed suspensively to the Supreme Court of this State. The appeal, by judgment of that Court, was transferred to this Court on November 7, 1960 by virtue of LSA-R.S. 13:4441, 13:4442 upon concluding the jurisdiction to determine the issue was vested in the Court of Appeal, First Circuit, and not the Supreme Court.
By stipulations entered into between all parties, the sole question for decision is: In view of Article 4, Section 12, of the Louisiana Constitution, may the State and its political corporations, including Housing Authority, insure their property under a single-premium, non-assessable contract with a mutual insurance company?
Article 4, Section 12 of the Constitution of Louisiana provides in part:
“The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private; nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association whatever, or for any private enterprise. Nor shall the State, nor any political corporation thereof, assume the liabilities of any political, municipal, parochial, private or other corporation or association whatsoever, except as otherwise provided in this Constitution; nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein; * *
LSA-R.S. 40:474(11) authorizes the Housing Authority to “Insure or provide for the insurance in stock or mutual companies of any movable or immovable property or any operations of the authority against any risks it thinks advisable to insure against; * * *
Appellants contend Housing Authority, under the provisions of the above quoted portions of the Constitution, is prohibited from insuring in a mutual company, and that the provisions of LSA-R.S. 40:474 (11) which attempts to permit local housing authorities to insure in mutual companies are unconstitutional.
It is axiomatic that the legislature of the State is vested with the lawmaking power and has jurisdiction on all subjects within the limitations imposed upon it by the Constitution, and there is a presumption the legislative act is constitutional. The Court in interpreting the constitutionality of an act of the legislature should not give consideration to sociological, historical, economic, political or other motives where the verbiage of the Constitution is plain, unequivocal and precise, but should apply the clear, not ambiguous provisions of the Constitution which has been termed a legislative act by the people themselves in their sovereign capacity, therefore the paramount law. Indeed, our obligation in this regard is succinctly stated in LSA-Civil Code, Article 13, as follows:
“When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.”
In 44 C.J.S. Insurance § 104, p. 644, we find:
“A ‘mutual insurance company’ may be defined generally as a co-operative enterprise in which the members are both insurers and insured, the company and its assets being democratically owned and controlled by the members, and losses and expenses being paid for by funds derived from premiums or assessments paid in by the members. Mutuality of co-operation of the members is its distinguishing characteristic.
“A mutual insurance company may be defined as a co-operative enterprise, wherein the members constitute both *874 insurer and insured, and contribute, by a system of premiums or assessments, to the creation of a fund from which all losses and liabilities are paid, and wherein the profits are divided among the members in proportion to their interests. It is an enterprise the distinguishing feature of which is the mutuality of co-operation of the members who gre united for that purpose, and each of whom takes a proportionate part in the management of its affairs, being at once insurer and insured, and participates alike in its profits and losses, and all of whom are policyholders. * * (Emphasis ours.)
In Appleman’s Insurance Law and Practice, Chapter 344, Section 10047, at page 100, we find:
“A mutual insurance company is an association to provide mutual relief for loss, and all policyholders are members, with each having the same proportionate interest and each being liable in the same proportionate extent. As regards their rights and remedies, the policyholders in a mutual company have been considered stockholders therein the same as owners of stock in a stock corporation, where there is no charter provision to the contrary. * * * ”
The constitutional provisions of the State of Louisiana which have been hereinabove quoted inhibit the State or a political subdivision thereof from using public funds for private purposes, and specifically denies the power to the legislature and its creations to loan, pledge or grant its funds, credit, property or things of value to or for all persons, associations, or corporations, public or private; purchase or subscribe to the capital stock or stock of a corporation or association or for any private enterprise; carry on the business of a private corporation, association, or private enterprise; become a part owner of a private corporation, association, or private enterprise.
Accordingly, in the light of these prohibitions, let us examine the relationship established between Housing Authority and Liberty should the bid of Liberty be accepted. Liberty maintains the status is only that of insured on the part of Housing Authority and insurer on the part of Liberty; whereas appellants maintain the acceptance of Liberty’s bid would, of necessity, mean that Housing Authority would occupy the dual position of insured and insurer.
It is conceded that in order to become a policyholder in Liberty it becomes necessary for the insured to become a member. This condition in itself is evidence that the relationship between Liberty and Housing Authority is more than that of insured and insurer. While it is true there are many differences between that of the status of a member of a mutual insurance company and that of a stockholder in a corporation, inasmuch as specifically a stockholder in a corporation makes an investment pure and simple, while we are of the opinion that one who contracts with a mutual company must, of necessity, occupy the dual position of an investor and a purchaser of insurance protection. No one can become a policyholder in a mutual company unless he likewise becomes a member thereof. Query: “To whom does the ownership of Liberty Mutual belong?” The answer is, of course, to the members. Therefore, it is apparent that a policyholder in a mutual company is invested with a proportionate indicium of ownership of the assets of the company. It matters not that this ownership is not susceptible to trade on the market, as is the case where there are shares of stock in a corporation, but as long as the policy is in effect, the member, in addition to the right to vote for the directors of the company, is vested with a proportionate ownership of the property of the company. The assessment which is paid by the member therefore in part pays for his membership in the company and in part for insurance protection.
*875 In 44 C.J.S. Insurance § 108, p. 657, we find:
“The rights and liabilities of a member of a mutual insurance company are delineated by the terms of the contract between them.
“Each member of a mutual insurance company is at the same time insurer and insured. In one aspect he is a mere holder of a policy containing a contract of indemnity, with a specific and limited fund out of which that indemnity is to be made good. In another aspect he is a member of the company, made so by the very nature of the contract, his rights and liabilities as such being determined by the contract, together with the statutes relating to such a company, and the charter and by-laws thereof. * * *
* * 5¡< * ‡ ❖
“Assets of company. The assets in a mutual company belong to the members, as in a stock company they belong to the stockholders, the members being interested therein in proportion to their several contributions. The interest of a member of a mutual company without capital stock, however, is not such a property right as can be sold.”
Though the question herein presents a case of first impression in Louisiana, it is noteworthy that the same issue has arisen in other states having constitutional limitations similar to that contained in the Louisiana Constitution prohibiting the lending of public credit to private enterprise and ownership in private concerns. Counsel for appellees have relied on the doctrine announced in those decisions to the effect that the purchase of non-assessable policies of insurance in a mutual company does not violate the constitutional inhibitions against the state or its political subdivisions engaging in private enterprises.
In the case of Lawrence v. Schellstede, 348 P.2d 1078, 1083, the Supreme Court of Oklahoma held:
“We therefore hold that the City of Tulsa by purchasing the insurance policy and becoming a member of the mutual insurance company did not become stockholder in the company, association or corporation as prohibited by the Constitution and did not appropriate money for, or loan its credit 'to any corporation, association or individual as prohibited by the Constitution.
“Defendants concede that the City of Tulsa could appropriate public funds to a corporation under contract for insurance but contends the funds sought to be appropriated herein is not for a public purpose but for a private purpose. In this connection they propose the City is acquiring an interest or becoming a stockholder in the mutual insurance company.”
In support of their conclusion, the Oklahoma Court, referred to and quoted with approval the decisions of the Supreme Court of Arizona in the case of State v. Northwestern Mutual Insurance Company, 1959, 86 Ariz. 50, 340 P.2d 200; of the Supreme Court of Arkansas in Clifton v. School District No. 14, 192 Ark. 140, 90 S.W.2d 508; of the Supreme Court of Kentucky in Louisville Board of Insurance Agents v. Jefferson County Board of Education, 309 S.W.2d 40; of the Supreme Court of Oregon in Johnson v. School District No. 1, 128 Or. 9, 270 P. 764, 765, 273 P. 386, and also the cases of French v. City of Millville, 66 N.J.L. 392, 49 A. 465; Downing v. School Dist. of City of Erie, 297 Pa. 474, 147 A. 239; McMahon v. Cooney, 95 Mont. 138, 25 P.2d 131; Burton v. School Dist. No. 19, 47 Wyo. 462, 38 P.2d 610; Fuller v. Lockhart, 209 N.C. 61, 182 S.E. 733; City of Macon v. Benson, 175 Ga. 502, 166 S.E. 26, and Miller v. Johnson, 4 Cal.2d 265, 48 P.2d 956. In each of these cases we find the courts simply stating the conclusion that the purchase under a policy of non-assessable insurance in a mütual company does not violate their *876 Constitutions prohibiting the State or a political subdivision thereof from engaging in a private enterprise.
The conclusions of the courts in the cases above cited in our opinion do not take into consideration the fact that though a member of a mutual insurance company does not, as does a stockholder in a corporation, have a certificate of stock itself by being a member of a mutual company, the member has a proprietary interest in the company which is contra to the provisions of the Constitution prohibiting the State or its political subdivisions from engaging in private enterprise. It is not a question of degree of ownership in the association which is denounced by the Constitution but any ownership whatever is prohibited. There is no injunction forbidding the purchase of insurance, but there is clear, not ambiguous, language in the Constitution prohibiting the State or its subdivisions from going into the insurance business.
In the case of Lewis v. Independent School Dist. of City of Austin et al., 139 Tex. 83, 161 S.W.2d 450, at page 452, the Supreme Court of Texas, construing Section 52 of Article 3 of their Constitution similar to provisions of our own Constitution, held:
“That the School District is a political corporation or subdivision of the State, as described in Section 52 of Article 3 of the Constitution, is well established. Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20; Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213; Dupuy v. State, 135 Tex.Cr.R. 595, 121 S.W.2d 1003. It is true that the by-laws provide that the liability of each policyholder is limited to and determined to be the amount of deposit premium specified in the policy issued to such policyholders. The bylaws contain other provisions, the pertinent parts of which we have already copied in this opinion. When all of the provisions of the by-laws are considered, in our judgment they do not relieve this case from the plain provisions of the Constitution. The by-laws also provide that each corporation having a policy in the Insurance Company shall be a member thereof during the life of the policy, and that each policyholder shall be entitled to one vote. The language ttsed in the Constitution is clear and unambiguous. It specifically prohibits the School District from becoming a stockholder in a corporation, association, or company. Whether the public policy announced in the Constitution is wise or unwise is not for this Court to decide. As said by Judge Speer, in the case of City of Tyler v. Texas Employers Ins. Ass’n, Tex.Com.App., 294 S.W. 195, 197:
“ ‘It is not a question of expediency, for upon that point we might all agree, but expediency cannot substitute the judgment of the municipality for that of the judgment of the framers of the Constitution. Public policy cannot be contrary to the express provisions of the Constitution. When that instrument speaks, the matter is indelibly settled, and its wisdom cannot be questioned.’ ”
As hereinabove noted, the particular question involved in this controversy has never been judicially determined by the appellate courts of this State, though in the case of Wermuth v. Minden Lumber Company, 129 La. 912, 57 So. 170, the Supreme Court in the syllabus said:
“Policy holders in a mutual accident insurance company are practically stockholders therein; and the fact that they are also trustees for their em-ployés, who may receive bodily injuries, does not affect their membership.”
and 57 So. at page 171 said:
“ * * * As the insurance corporation was organized on the mutual plan, all who insured in it became ipso facto members of the corporation, and con *877 stituted the whole membership, as no one can become a member of a mutual insurance company who has not been insured in it, unless he is the assignee of a policy. * * *
“ * * * The defendant as the assured became a member of the insurance company; and any other construction would result in leaving the corporation without members. * *”
In the case of Union Mutual Fire Insurance Company of Cincinnati, Ohio (James B. Schwing, Trustee) v. Standard Guano and Chemical Mfg. Co., 7 Orl.App. 485, the Orleans Court of Appeal categorized members of a mutual insurance company as stockholders.
A mutual insurance company is a private enterprise engaged in the insurance business. The sole source of capital for its operation is the payment by its members of assessments, whether same be limited or unlimited. The board of directors of the company, charged with its management and operation, are elected solely by its members. No one other than a member may procure a policy of insurance from a mutual insurance company. The whole is composed of its component parts. Without specifically naming it, the Constitution of this State clearly bans any participation by the State or its political subdivision in the ownership and operation of a private enterprise engaged in the insurance business and in gauging such activity does not place a yardstick of degree of participation in forbidding same. The participants in a mutual insurance company are the sole owners and it matters not what connotation is utilized to designate the owners — whether it be stockholders, associates or members.
For these reasons we are of the opinion that The Housing Authority of the City of Bogalusa, a political corporation of the State of Louisiana, is prohibited by Article 4, Section 12 of the Constitution of Louisiana from insuring in a mutual company, and the provisions of LSA-R.S. 40:-474(11) which attempt to permit local housing authorities to insure in mutual companies are unconstitutional.
Judgment reversed.
JONES, J., recused.