Pearson, C. J.
 

 A buys of B ten bags of cotton, informing him that his purpose is to ship to Liverpool on speculation, pays one half of the price in cash, and gives his note for balance; the cotton is lost on the voyage by the “ perils of the sea.” Would it enter into any man’s head to conceive that A could in equity enjoin the collection of the note, upon the ground that the cotton was lost, that there was a
 
 total failure of consideration?
 
 Too much learning sometimes smothers the case and excludes a plain, common sense view, upon which its merits depend.
 

 How does our case differ from the cotton case? The plaintiff got what he bargained for — “ a policy of insurance,” which, as his counsel says is a “thing of value.” Did he expect or imagine that the company, of which he became a member, was bound to warrant to him and to all the other members its own solvency? That was a “ peril of the sea, with which the vendor was in no wise concerned. The purchaser has lost his cotton; but how that can be a failure of consideration cannot be conceived. He has the same right to recover back the money which he paid as a part of the price, as to object to the payment of his note; and in effect, 'it was the same as if he had paid the whole price in cash, and then borrowed one half of the money, by giving his note on interest; so the notion of a failure of consideration is out of the question.
 

 We also think the position taken by the defendant, that the plaintiff, by failing to pay the assessment of 20 per cent.
 
 *344
 
 and by failing to renew, has forfeited his policy, and, although bound to pay the promised note, is not any longer entitled to his policy, and has ceased by the forfeiture to be a member of the company, is not tenable. The truth is the defendant waived the right to insist upon the forfeiture; and the correspondence abundantly shows that, after the company found that the plaintiff could not be moved from the position he had taken and was determined to test the question, it concluded that it was the part of wisdom to give into it, and accordingly at the meeting 6th August 1866 it was resolved to wind up the affairs of the company; and thereupon all of its members with one or two exceptions declined to pay the assessment or to renew. The effect of which was to put the company in such a condition that it could no longer insist upon forfeitures. So we are satisfied that the plaintiff' continued to be a member of the company, and as such entitled to raise the question as to whether he could be forced to pay the numerous notes. Indeed it seems to have been the purpose on both sides fairly to present the point as to a failure of consideration, for the determination of the court, as well as any other matter affecting the respective rights of the plaintiff and the company.
 

 But while relieving the plaintiff from the effect of the supposed forfeiture, and conceding to him the right of still being a member of the company, we must impose on him the condition of treating the resolution of’the 6th August 1866, to wind up the affairs of the company, as having the legal effect of an assessment of 100 per centum on the premium notes; in other words, as calling for the payment of the full amount, in order to carry into effect the resolution of the company, and enable it to meet its liabilities and divide its excess, if any.
 

 But it was said for the plaintiff, in the second place, sup
 
 *345
 
 pose the company has the right to collect the premium notes, the plaintiff is entitled, by way of equitable set off, to have the value of his policy estimated, and the amount credited, so that he shall only be forced to pay the residue. Here an insuperable difficulty presents itself. How can the value of the plaintiff’s policy be estimated? Under the rule
 
 uid cerium est quod cerium reddi
 
 potest,” the value could be fixed by well known rules,
 
 provided the company was solvent-
 
 — •“ There is the .rub.” If, according to the first position taken of a failure of consideration, the company be wholly insolvent, then the policy is of no value, and there is nothing to constitute an equitable set off; and whether the'company be or be not wholly insolvent, can only be ascertained by allowing it to collect all of the individual notes, as they are termed, and all of the premium notes that can be made available. This fund will be first applicable to the discharge of the liabilities of the company. The excess, if any, will be applica- , ble to the outstanding policies; and thereby the value of each policy, when the holder pays up, (for of course all defaulting will be excluded,) can be fixed. The subject cannot be dealt with in any other manner.
 

 It was said on the argument this mode of winding up the_ concern will give to those who are so fortunate as to have died an undue preference over those merely who are still living. The preference can in no sense be termed an
 
 undue
 
 one. In respect to them the contingency has happened— the debts are absolute, whei-eas those who are living have no debts, but a mere right to participate in the division of the excess of assets, should there be any after a payment of all debts and liabilities.
 

 The idea of any particular hardships upon the living members rests on the fallacy that, while entering into the company with the expectation of mutual insurance in the
 
 *346
 
 event of death, they seem not to have had in view the possibility of mutual loss in the event of
 
 insolvency.
 

 The bill will be dismissed.
 

 Per Curiam.
 

 Bill dismissed.