137 So.2d 315

**PUBLIC HOUSING ADMINISTRATION**

v.

**HOUSING AUTHORITY OF the CITY OF BOGALUSA et al.**

Nos. 45722, 45723.

Dec. 11, 1961.

Rehearing Denied Feb. 19, 1962.

A. J. Waechter, Jr., Charles W. Lane, III (of Jones, Walker, Waechter, Poitevent, Carrere & Denegre), M. Hepburn Many, New Orleans, for defendants, appellees-relators.

Rivet & Rivet, New Orleans, amicus curiae.

William McM. King (of Ellis, Lancaster & King), New Orleans, James T. Burns, Covington, Jack P. F. Gremillion, Atty. Gen., Carroll Buck, First Asst. Atty. Gen., Dan W. Graves, Jr., Bogalusa, for defendants-respondents and intervenors-respondents.

McCALEB, Justice.

This action for a declaratory judgment was brought by Public Housing Administration (hereinafter called Administration) in order to have a determination respecting certain rights under an Annual Contribu-

tion Contract (42 U.S.C.A. § 1410) with defendant local Housing Authority. By supplemental petition, Liberty Mutual Fire Insurance Company (hereinafter called Liberty) and Reliance Insurance Company (hereinafter called Reliance) were made parties defendant.

Plaintiff is an agency of the United States authorized to sue and be sued (42 U.S.C.A. § 1404a). Defendant, Housing Authority, is a public corporation of this State, created pursuant to R.S. 40:381, et seq. Liberty is a Massachusetts corportation and Reliance is a Pennsylvania corporation. Both are qualified to do business and are doing business in Louisiana. Liberty is a mutual company and Reliance is a stock company.

Housing Authority is authorized by the Legislature to enter into contracts with the federal government in order to receive loans and subsidies for the construction and maintenance of low-rent housing (see R.S. 40:-451). Pursuant thereto, Housing Authority entered into a contract with Administration in connection with the construction of projects Nos. La–24–1 and La–24–2 in the city of Bogalusa. The agreement provided that Housing Authority carry fire and extended coverage insurance to protect its buildings against loss, it being required that Housing Authority advertise for bids on the insurance contract and that the insurance policy should be purchased from the lowest responsible bidder. In computing the lowest bid, Housing Authority was obliged by the con-

tract to give consideration to the history of dividend payments by the insurer for the past ten years.

The facts of the case have been stipulated by the parties and are substantially as follows:

Housing Authority advertised for bids and bids were received. Only the bids of Liberty and Reliance conformed to the requirements of the State Rating and Fire Prevention Bureau. See R.S. 22:1405. In order to conform with the aforementioned Bureau's rates, the bids were, of necessity, identical in amount.[1] The only difference in the bids of Liberty and Reliance lay in the fact that Liberty, as a mutual insurance company, had a history of dividend payments which Housing Authority, by the terms of its contract, was required to consider in determining the lowest bidder.

Administration demanded that Housing Authority contract with Liberty for the insurance but Housing Authority awarded the contract to the stock company, Reliance. The reason for this decision was that it was advised by its attorney that the purchase of insurance from a mutual company by a State agency would contravene Article IV, Section 12 of the Louisiana Constitution. This advice was based upon opinions of the Attorney General, there being no judicial pronouncement in this State on the issue.

Housing Authority is authorized by R.S. 40:474(11) to "insure or provide for the insurance in stock and mutual companies of any movable or immovable property * * *". However, it is contended by Housing Authority and by Reliance that this statute is unconstitutional.

The constitutional prohibition in question reads:

"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private; nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association whatever, or for any private enterprise. Nor shall the State, nor any political corporation thereof assume the liabilities of any political,

---

1. It is to be noted that, in most states, Administration waives the competitive bidding requirement and allows the state agency to negotiate with individual insurers regarding insurance rates. In Louisiana, Texas and Virginia, however, where the rates are controlled by law, no purpose is served by negotiation. For this reason, Administration continues to require competitive bidding in these states which, in view of the contractual stipulation, simply means that the fire insurance must be let to a mutual insurer, if one submits a bid. Indeed, the only competitive feature of the bidding, if it could be called such, would result in the letting of the contract to the mutual having the best or highest dividend record during the anterior ten years.

municipal, parochial, private or other corporation or association whatsoever, except as otherwise provided in this Constitution; nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein; * * *". Article IV, Sec. 12, Louisiana Constitution of 1921.

The insurance contract offered by Liberty was a single premium non-assessable policy. Hence, Housing Authority's liability to the mutual company could not exceed the full three-year premium for the policy, which would have provided the same coverage for the same price as the stock company's policy, and additionally, by virtue of mutual membership, would have provided to Housing Authority the advantage of sharing in any profits of the Company which might be distributed as dividends.

In view of this, it was stipulated that Liberty was the lowest bidder if Housing Authority could acquire the coverage provided by its policy without contravening the Constitution. Therefore, the sole question is whether membership of a State agency in a mutual insurance company as a necessary incident to the purchase of insurance on the mutual plan is consistent with Article IV, Section 12 of the Constitution which, as shown above, forbids private investment by the State, its subdivisions and agencies.

The district judge adopted the position taken by plaintiff that a policyholder in a mutual insurance company does not, by reason of his membership in the company, either subscribe to the stock or become a part owner of the company's assets while his policy is in effect. It was accordingly concluded that such membership by a state agency did not violate Section 12 of Article 4 of the Constitution.

On appeal, the Court of Appeal, First Circuit, reversed the decision and held the statute unconstitutional. It declared that:

"A mutual insurance company is a private enterprise engaged in the insurance business. The sole source of capital for its operation is the payment by its members of assessments, whether same be limited or unlimited. The board of directors of the company, charged with its management and operation, are elected solely by its members. No one other than a member may procure a policy of insurance from a mutual insurance company. The whole is composed of its component parts. Without specifically naming it, the Constitution of this State clearly bans any participation by the State or its political subdivision in the ownership and operation of a private enterprise engaged in the insurance business and in gauging such activity does not place a yardstick of degree of participation in for-

bidding same. The participants in a mutual insurance company are the sole owners and it matters not what connotation is utilized to designate the owners—whether it be stockholders, associates or members." See Public Housing Administration v. Housing Authority of City of Bogalusa, 129 So.2d 871 at page 877.

On application of Administration and Liberty, writs of certiorari were granted which, after consolidation and argument here, have been submitted for our decision.

The specifications of error contained in the briefs of Administration and Liberty are substantially the same, save in one respect.[2] They are, in essence, (1) that the Court of Appeal erred in applying to this case the fourth clause contained in Article 4, Section 12, of the Constitution as that clause, which prohibits the State from undertaking to carry on the business of any corporation or association or from becoming a part owner therein, is a limitation directed against the State alone and not its political corporations; (2) that the Court of Appeal erred in not considering the history, which prompted the adoption of the constitutional restraints contained in Section 12 of Article 4, as this would show that it was never designed or intended to ban the purchase of non-assessable single premium fire and extended coverage insurance issued by a company organized on the mutual plan, and (3) that, in view of the great weight of authority in this country, it was error for the Court of Appeal to conclude that, in the purchase of a mutual policy, the State or its political subdivisions lends or pledges it credit, grants its funds, assumes the liabilities of any person, association or corporation, becomes a stockholder or undertakes to carry on or engage in the insurance business, or becomes a part owner thereof.

In support of this last contention, counsel cite cases from eleven of our sister States wherein it has been held, in construing constitutional provisions somewhat similar to those of Section 12 of Article 4 of our

2. Administration contends that the Court of Appeal's holding that the local Housing Authority cannot legally "purchase mutual insurance on a non-assessable policy" imposes a direct and substantial interference on the activity of a Federal agency and is thus violative of the supremacy clause, Article VI, Clause 2 of the United States Constitution. This point is raised for the first time in this Court, not heretofore being pleaded or argued either in the trial court or the Court of Appeal and, indeed, appears to be contrary to the stipulation of facts, wherein it was agreed that, if the bid of Liberty was found to be illegal, Reliance Insurance Company was the lowest responsible bidder. Suffice it to say that this Court will not consider this belated constitutional claim under its well-settled jurisprudence. See Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742 and State ex rel. McAvoy v. Louisiana State Board of Medical Examiners, 238 La. 502, 115 So.2d 833 and the authorities cited in these cases.

Constitution, that state agencies did not violate the respective restraints in purchasing policies issued by mutual companies, thereby becoming members in such corporations. See State v. Northwestern Mutual Life Ins. Co., 86 Ariz. 50, 340 P.2d 200 (1959); Clifton v. School District No. 14 of Russellville, 192 Ark. 140, 90 S.W.2d 508 (1936); Miller v. Johnson County Auditor et al., 4 Cal.2d 265, 48 P.2d 956 (1935); Louisville Board of Insurance Agents v. Jefferson County Board of Education, Ky., 309 S.W.2d 40 (1958); McMahon v. Cooney, 95 Mont. 138, 25 P.2d 131 (1933); French v. Mayor of Millville, 66 N.J.L. 392, 49 A. 465 (1901); Fuller v. Lockhart et al., 209 N.C. 61, 182 S.E. 733 (1935); Huffman et al. v. Schellstede et al., 348 P.2d 1078, (Okl.S.Ct.1960); Johnson v. School District No. 1 of Multnomah County, 128 Or. 9, 270 P. 764, 273 P. 386 (1928); Downing et al. v. School District of Erie, 297 Pa. 474, 147 A. 239 (1929); Burton v. School District No. 19 et al., 47 Wyo. 462, 38 P.2d 610, (1934). Only one State Supreme Court, that of our neighboring State of Texas, has announced views similar to those expressed by the Court of Appeal herein. See Lewis v. Independent School Dist. of City of Austin, 139 Tex. 83, 161 S.W.2d 450 (1942).

In view of counsel's contention that the Court of Appeal erroneously applied the Fourth Clause of Section 12 of Article 4 of the Constitution to this case, we direct our immediate attention to the clauses contained in the Article in an effort to ascertain what it aims to prohibit and what is actually prohibited by the language thereof. The first clause, which forbids the pledging or granting to any persons, associations or corporations, public or private, the funds, credit, property, or things of the State of any of its political corporations, is perfectly clear and, as stated by the Court of Appeal, needs no interpretation. The same is true of the second clause, prohibiting the State or any political corporation to purchase or subscribe to the capital or stock in any corporation or association or for any private enterprise. Likewise the third clause, as found by the Court of Appeal, clearly proscribes the assumption by the State or any of its political corporations of the liabilities of any type of corporation or association, except as otherwise provided in the Constitution.

But, say relators' counsel and counsel for amici curiae, who has favored us with a brief supporting relators' contentions, the fourth clause of Section 12, stating " * * nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein; * * *" can only apply to the State and not to a state agency like the Housing Authority. In substantiation of this, counsel refer to the general rule that limitations imposed by the Constitution will not be enlarged by construction and that such re-

straints will be construed strictly in conformity with the language used by the writers of the Constitution. Many cases are cited in support of this position and, chiefly, certain dicta, pertaining to the construction to be given the language of Section 12 of Article 4 of the Constitution, contained in the opinion of the Court of Appeal, First Circuit, in Stokes v. Harrison, La.App., 109 So.2d 506 (a case involving the proper interpretation of Section 2 of Article 4 of the Constitution), which was quoted with approval by this Court in its opinion on writ of review. (See 238 La. 343, 359, 115 So.2d 373, 379).

■ Constitutional limitations, like those set forth in Section 12 of Article 4, are to be construed so as to give full meaning and effect to the language employed therein. "One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together. Every provision should be construed, where possible, to give effect to every other provision." 1 Cooley's Constitutional Limitations (8 ed.) 129.

The Court of Appeal did not say, in this case, that the fourth clause of the constitutional provisions, which prohibits the State from carrying on business (either as manager or part owner) was to be extended to state agencies. What it did say was that the provisions of the entire Section 12, when read as a whole, " * * * clearly bans any participation by the State or its political subdivisions in the ownership and operation of a private enterprise * * *". This conclusion is accurate in our opinion and, hence, it matters not that the fourth clause of Section 12 of Article 4 applies only to the State, for it neither adds nor detracts from the effectiveness of the manifest meaning and purpose of the first three clauses which, in sum, reprobate investment by any state agency in a private business.[3]

3. Giving a literal interpretation to the language of the fourth clause of the prohibition contained in Article 4, Section 12 might produce strange consequences, for the first three clauses, after forbidding the State or any of any of its agencies to use its funds, credit, property or things of value for private purposes, or to purchase or subscribe to the capital or stock of any private enterprise, or to assume any of the liabilities of any such enterprise, declares, in the fourth clause, that the State shall not undertake " * * * to carry on the business *of any such corporation or association, or become a part* owner therein * * *". (Italics ours.) Thus, according to relators' construction, the fourth clause would have the practical effect of exempting political corporations from becoming a part owner in private corporations or associations, despite the fact that the second clause prohibits such agencies from subscribing to the capital or stock in any private enterprise, and also that the first and third clauses forbid the use of public funds for private investment or for a state agency to assume any liability of other corporations or associations.

■ Being of this view, it becomes unnecessary to engage in a discussion of relators' specification that the Court of Appeal erred in not considering the history of the constitutional prohibitions which, assertedly, were attributable to the panic of 1837 and emanated from the use of public funds by political agencies for private enterprise. It is enough to say that the constitutional aim is evident and explicit; it forbids the use of public funds for private enterprise.

Accordingly, we address our attention to the main question in the case—does a state agency violate the constitutional proscription when it becomes a member of a mutual insurance company as a consequence of a contract under which the company insures the property of the agency in consideration of the payment of a single premium, it being agreed that, although the agency may participate in dividends in the company, it shall not be assessed for any losses which may be sustained?

To determine this question it is of vital importance to understand the nature of a mutual insurance company. According to the by-laws of Liberty, which are in evidence, all policyholders are members of the company and no one may be a member unless his policy is "in force". The sole management of the company is vested in the members, each member being entitled to one vote per policy and any organization, such as Housing Authority, which becomes a member may appoint an individual to represent or act for it in the affairs of the company. The directors and the chief executive officers of the company must be members, i. e., policyholders, and a corporate member (such as Housing Authority) would be eligible for such offices through its representative. Dividends are payable at the discretion of the Board of Directors and these may be distributed, even to former members. Policies issued by the Company may, in the Board's discretion, be either assessable or non-assessable and the rights of members holding each type of policy are the same with respect to management and sharing of profits. All assets of the Company are owned by the members and surplus may be distributed to the members or former members in whole or in part at the Board's discretion.

The by-laws of Liberty conform in all particulars with our law relative to domestic mutual insurers as set forth in R.S. 22:121–132. These provisions indicate that the captial of a mutual company is its surplus and this surplus is acquired, according to R.S. 22:124, either by payment in advance of premiums by policyholders and members of the mutual insurer or by borrowing a sum sufficient to defray the reasonable expenses of its organization and to meet the requirements of R.S. 22:121. By R.S. 22:131, non-assessable policies may be issued upon compliance with certain conditions.

■ As found by the Court of Appeal, it is well established that a mutual insurance company is a cooperative enterprise in which the members are both insurers and insured; the Company is owned and managed by the policyholders; the business is conducted for their benefit; they are the owners of the profits and the surplus and thus a policyholder has rights, both as an insured and as a co-owner of the assets of the Company. See 44 C.J.S. Insurance § 104, page 644; Appleman's Insurance Law and Practice, Chapter 344, Section 10047, page 100; May on "Insurance", Vol. 2, page 1280. In Cooley's Briefs on the Law of Insurance, Vol. 1, (2d) Ed. page 68, it is stated:

"The members and stockholders of a mutual insurance company are, therefore, identically the same. That is to say, a stockholder of a mutual insurance company is simply one who has paid into the capital of the company by way of premiums and who is responsible for its losses to that extent and who is entitled, when such prem-

iums shall have been accumulated to a larger sum than is required to pay the losses to pro rata division thereof as profits." [4]

Counsel for relators nevertheless argue that it is not true that the purchaser of a non-assessable mutual policy occupies the dual position of an investor and purchaser of insurance. They say that such a purchaser makes no investment in the company nor engages in the insurance business. But, if this be so, we wonder how and by what method of reasoning the member and policyholder becomes entitled to his share of the distributed earnings of the Company and to its assets upon dissolution. What counsel are really professing is that, since the policyholder and member turns over his money to the mutual mainly for insurance protection and invests in the capital of the company in a most limited sense—that is— with the hope of securing a reduction in insurance costs by participation in the distribution of the company's profits, a state agency does not violate the spirit of the constitutional prohibition by subscribing to

---

4. In the opinion of the late learned district judge, he noted that Judge Cooley, in his treatise on constitutional limitations, Vol. 1, p. 469, had stated that a municipality, by becoming a member of a mutual insurance company, did not violate a constitutional provision prohibiting municipalities from owning stocks or bonds of any association or corporation and, by giving premium notes for the payment of assessments to meet losses incurred by such an insurance company, the municipality did not loan its credit to the company in violation of a constitutional provision against doing so. The statement referred to by the author is contained in a footnote on page 469 of his work, in which he cites French v. City of Millville, 66 N.J.L. 392, 49 A. 465 as authority. We do not regard the holding of the Supreme Court of New Jersey as having the approval of Judge Cooley. He merely states the fact of the holding and the questions disposed of.

mutual membership, even though it may violate the letter of the limitation. But, as correctly stated by the Court of Appeal, "it is not a question of degree of ownership in the association which is denounced by the Constitution but any ownership whatever is prohibited." [129 So.2d 876.]

Although counsel for relators attempt to show that there is no difference, practically or legally, between the purchasing of insurance in a stock company and becoming a stockholder and member of a mutual company, we think the difference in status is plain. Purchase of insurance protection in a stock company is a transaction under which no liability whatever is assumed by the purchaser beyond the amount of the premium and he, of course, acquires no interest whatever in the insurance company. Therefore, if the company should fail before the term of insurance has expired, the policyholder becomes its creditor for the return of the part of the premium for the time during which he has not had coverage.

But the policyholder of a mutual company has the relation of member and part owner of the company and this produces entirely different legal consequences from those which apply to a policyholder of a stock company. In the event of failure of the mutual before the expiration of the term of the policy, the policyholder and member does not occupy the status of a creditor of the company. On the contrary, his relation to the company is the same as a stockholder of a corporation and, if he has not paid his premium (or subscription to capital) in full, he becomes the debtor of the company for whatever amount of premium he originally agreed to pay.

The law on the subject of the liability of a mutual policyholder for the full amount of his premium on a non-assessable policy, in case of the company's receivership or bankruptcy, seems to be unanimous. Indeed, it is apt to observe at this juncture that, although counsel for relators apparently lay great stress on the circumstance that this case involves a non-assessable policy, we perceive no real difference, insofar as the relations of the contracting parties are concerned, whether the policy be assessable or non-assessable. If it is assessable, the policyholder unquestionably becomes liable to a limited extent for the losses occasioned by the experience of the business which, in the case of a state agency, clearly violates (in our opinion) the constitutional proscription.[5] If it is non-assessable, the premium which the member has paid is transferred to the surplus of the company which is essentially the capital (see R.S. 22:121 and R.S. 22:124(1)) and is earmarked for the same purpose, i. e., the payment of the insurance losses of the company.

5. Yet, New Jersey holds otherwise. See French v. City of Millville, 66 N.J.L. 392, 49 A. 465.

The legal status of the non-assessable and assessable policyholders is, therefore, the same. In both cases they are investors in a joint enterprise, a mutual enterprise, as it is called—the only difference relates to the extent of their liability for insurance losses, the non-assessable policyholder being liable for no more than the single premium and the assessable policyholder being responsible for a fixed amount over the premium paid.

As stated above, the relation of a mutual member and policyholder to the company, as a subscriber to its capital, finds full support in all the authorities relied on by counsel for Housing Authority. Buck v. Ross, 59 S.D. 492, 240 N.W. 858, decided by the Supreme Court of South Dakota in 1932, was a suit brought by a receiver of an insolvent mutual insurance company to recover against one of its policyholders and members for the full amount of the premium due on an employers' liability insurance policy for the entire year of 1926. It appeared that the insurer went into receivership shortly after the policy was issued and, on May 29, 1926, the policyholder was notified that the insurance was no longer in effect. The policyholder, who had agreed to pay the full premium, thereafter tendered the amount which would have been due up to the date of receivership and defended on the ground that, since all protection and benefits which were to be given under the policy terminated after the appointment of the receiver, no liability was thereafter due for the unearned portion of the premium. The lower court sustained this defense but the Supreme Court reversed the decision on appeal, relying on a long list of pronouncements from other jurisdictions in support of its ruling,[6] and quoting with approval from Gleason v. Insurance Co., 127 Tenn. 8, 151 S.W. 1030, 1033, as follows:

"Companies organized upon the plan of this one (mutual company) have no capital stock. The cash paid in for premiums and the premium notes constitute their assets, and the policyholders or members sustain a relation to the company very similar to that of stock holders. They can no more recover premiums paid in, nor avoid premium notes, in case of insolvency, than could stock holders in an ordinary corporation recover money paid in subscription to stock or avoid notes given for subscription to stock. So, the insolvency

6. Carey v. Nagle, 5 F.Cas. 60, No. 2403; Corey v. Sherman, 96 Iowa, 114, 64 N.W. 828, 32 L.R.A. 514; Howard v. Palmer, 64 Me. 86, Commonwealth v. Massachusetts Mut. Fire Ins. Co., 112 Mass. 116; Nicol v. Murphy, 145 Mich. 424, 108 N.W. 704; Vanatta v. New Jersey Mut. Life Ins. Co., 31 N.J.Eq. 15; Conigland v. North Carolina Mut. Life Ins. Co., 62 N.C. 341, 93 Am.Dec. 89; Sterling v. Mercantile Mut. Ins. Co. of Philadelphia, 32 Pa. 75, 72 Am.Dec. 773; Johnson v. House, 131 Ark. 113, 198 S.W. 876.

of a company like this gives no right to a policyholder to recover any premium paid, or to avoid the payment of any premium note, so long as the company has outstanding debts."

Also cited in Buck v. Ross was Illinois Coal Operators Mut. Employers' Liability Insurance Co. v. Chicago etc. Coal Co., 217 Ill.App. 625, involving a mutual policy of employers' liability insurance, wherein it was held that the promise of a person, who becomes a member of a mutual company, to pay premiums for one year constitute his contribution to the company's capital; that he is liable for the full amount thereof and cannot avoid payment of the remainder of the premium by securing the cancellation of the policy. The South Dakota Supreme Court then commented:

"The statute referred to in this Illinois case simply confirms the general rule that premiums paid by members of a mutual insurance company constitute in effect, the capital of the company. The defendants, being members of this mutual company, and the company becoming insolvent, are liable for the entire amount of the premium they agreed to pay, even if benefits under the policy were terminated by insolvency." [59 S.D. 492, 240 N.W. 861.]

■ We conclude, as did the Court of Appeal, that the purchase of mutual fire insurance, accompanied as it is with membership in a mutual insurance company, constitutes a subscription to capital by Housing Authority which contravenes Section 12 of Article 4 of the Constitution.

We have considered the impressive array of cases relied on by relators from the highest courts of other states and find, for the most part, that these authorities are based on the premise that it would be illogical to believe that the framers of the Constitution intended to prohibit the purchase of mutual policies by state agencies. For our part, we respectfully disagree and, like the Court of Appeal, we are of the view that, since the language of the constitutional prohibition is explicit, it is not a question of degree; the Constitution is not to be violated at all.

The judgment is affirmed.

HAWTHORNE, J., dissents with written reasons.

SANDERS, J., dissents and will assign written reasons.

HAMLIN, J., absent from the City.

HAWTHORNE, Justice (dissenting).

I am in full accord with the reasoning and conclusion of the late Robert D. Jones, district judge in this case, so well expressed in his written reasons for judgment that

I adopt them as my own and make them my dissent. Judge Jones said:

"Petitioner, Public Housing Administration, an agency of the United States of America, with authority to sue and be sued under its own name (42 U.S.C. 1403, 1404a, 1405) has filed this suit against the Housing Authority of the City of Bogalusa, a public corporation created and established under the Housing Authority law (R.S. Title 40, Section 381 et seq.). The Federal Authority will hereinafter be referred to as 'Administration', while the State, or local authority, will hereinafter be referred to as 'Housing Authority'.

"The allegations of the petition set forth that the Housing Authority under the provisions of R.S. 40:451 was authorized to accept contribution grants, or other financial assistance, from the Federal government, for and in aid of housing projects within its area of operation, and to do all things necessary to secure the financial aid and cooperation of the Federal government in the construction, maintenance and operation of low rent housing projects, and that the Administration was authorized by the United States Housing Act of 1937 to make loans to State agencies for said purposes (42 U.S.C. Secs. 1409–1410); that the Administration entered into an annual contribution contract with Housing Authority for the development of low rent housing projects Nos. S–La–24–1 and La–24–2, and under the terms of the contract the Administration made loans to Housing Authority and paid annual contributions of subsidies to Housing Authority, thereby assisting in achieving and maintaining the low rent character of the projects; that under the provisions of the annual contributions contract Housing Authority was required to carry fire and extended coverage insurance on the low rent housing projects, and that Housing Authority was required to advertise for competitive bids for such insurance and to award same to the lowest responsible bidder. It was further set forth that the lowest bid was to be determined upon the basis of net cost to Housing Authority. Net cost is further defined in the contract to be the gross deposit premium, plus the cost of insurance against the hazards, if any, of assessments, less any anticipated dividend, and the dividend payment and assessment record of the insurer for the previous ten years; further La. R.S. 40:474 provides that Housing Authority provide for insurance in stock or in mutual companies; that in accordance with said annual contribution contract the Housing Authority advertised for bids for fire and extended insurance on the above mentioned projects and did receive bids from both stock and mutual insurance companies, and that the lowest bid on the basis of net cost to said Housing Authority for such insurance was submitted by Liberty Mutual Fire Insurance Company; that irrespective

of the bid of Liberty Mutual Fire Insurance Company being the low bid, Housing Authority refused to accept same and advised Administration it intended to award the fire and extended coverage insurance to Reliance Insurance Company, a stock insurance company. The petitioner Administration further set forth that any extra expense for insurance on account of its annual contribution contract with Housing Authority would have to be borne by Administration in the form of increased annual contributions. Accordingly, the petitioner prayed that Housing Authority be required to award the contract for fire and extended coverage insurance to the lowest responsible bidder, and that said lowest responsible bidder was the Liberty Mutual Fire Insurance Company. A supplemental and amended petition was subsequently filed making the Liberty Mutual Fire Insurance Company, a foreign mutual insurance company, defendant in said cause, and the Reliance Insurance Company, a foreign stock insurance corporation, a defendant in said cause.

"All of the defendants filed answer and many stock insurance companies of the State of Louisiana filed an intervention, and the defense raised by all of them is substantially the same, as follows: Respondents admitted the contract between Administration and Housing Authority, and that the projects described in the petition were constructed; and further admitted that the contribution contract called for Housing Authority to accept the lowest responsible bid. However, all of the respondents except Liberty Mutual Fire Insurance Company denied that the lowest responsible acceptable bid was submitted by Liberty Mutual Fire Insurance Company. Respondent Housing Authority admitted that it refused to accept the bid of Liberty Mutual Fire Insurance Company and that its refusal was based on Section 12 of Article 4 of the Constitution of the State of Louisiana, which prohibits the State, or any political corporation thereof, awarding fire and extended coverage insurance to mutual insurance companies. Respondents further set forth that the provisions of R.S. 40:474 (11) of the State of Louisiana authorizing Housing authorities of the State to procure insurance in mutual companies is unconstitutional because of the prohibitions contained in Article 4, Section 12 of the Constitution of the State of Louisiana. Accordingly, all the respondents prayed that the Court should declare that the awarding of the bid to the Reliance Insurance Company, a stock company, conformed with the requisites of the law and was the lowest responsible legally acceptable bid.

"At the time of the trial a stipulation of facts was entered into by the respective parties to this suit, in which Administration was admitted to be an agency of the United States of America and administers the functions of the United States Housing Authori-

ty, and that Housing Authority is a public corporation and has the right to contract with Administration for financial assistance in connection with low rent projects; that Administration has entered into an annual contribution contract with Housing Authority for the development of two low rent housing projects and has loaned Housing Authority an amount in excess of $1,000,-000.00, of which $31,569.13, is now outstanding, and has paid annual subsidies, or contributions, under the contract to Housing Authority in the total amount of $173,485.-92; that the annual contribution contract requires Housing Authority to insure said low rent housing projects against loss by fire, and further requires Housing Authority to advertise for competitive bids and to award such insurance to the lowest responsible bidder; that Housing Authority advertised for competitive bids and the lowest responsible bid under the terms of the contract was submitted by Liberty Mutual Fire Insurance Company, provided Housing Authority may legally insure in a mutual insurance company, and in the event Housing Authority may not legally insure its property with a mutual insurance company, the most responsible bid was submitted by Reliance Insurance Company.

"It was further stipulated that the type of policy to be written by Liberty Mutual Fire Insurance Company in connection with its bid was non-assessable, and that the holder of the policy was not subject to any contingent liability, nor liable to any assessment, and that by virtue of the policy the policy holder was a member of the company and entitled to vote in person or by proxy at all meetings of the company.

"From the above résumé of the pleadings, together with the stipulation of facts, the question presented is—may the State and its political corporations, or subdivisions (such as Housing Authority) insure their property under a fixed premium non-assessable contract made with a mutual insurance company? It is, of course, the contention of Administration that such might be done without violating the provisions of Article 4, Section 12 of the Louisiana constitution, while it is the contention of the defendants that to insure State property under such conditions violates said provisions of our constitution.

"The pertinent provisions of Article 4, Section 12 necessary to a decision of this cause are as follows: (1) The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations, or corporations, public or private; (2) Nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association, whatever, or for any private enterprise; (3) Nor shall the State nor any political corporation thereof, assume the liabilities of any

political, municipal, parochial, private or other corporation or association whatever, except as otherwise provided in this Constitution; (4) Nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein.

"Before determining whether or not the insuring of State property in a mutual insurance company where the policy is non-assessable contravenes the above provisions of our Constitution, I consider it appropriate to point out the historical background which caused these provisions to be incorporated in our Constitution. In the early part of the last century, not only Louisiana, but practically every other State in the Union, enacted constitutional provisions to prohibit the investment of State funds, or credits, to private enterprise, for the reason that at that time there had been extravagant spending of public funds by local subdivisions of government in aid of enterprises apparently devoted to quasi public purposes, but actually engaged in private business, such businesses being railroads, canals, banks, etc. (See 'A Study of the State Government of Louisiana', Melvin Evans, Louisiana University Press 1931). See also Day v. Buckeye Water & Conservation District, 28 Ariz. 466, 237 P. 636.

"I think it further proper to point out where there is a limitation of power by a constitutional provision the Court should certainly give consideration to the evil that was sought to be corrected by said Constitutional provisions. Thus, when the above provision was incorporated in our Constitution the evil sought to be corrected was the depletion of the public treasury by the expenditure of public funds for quasi public enterprises but really private ventures, as herein above mentioned, but, it was most assuredly never in the mind of the framers of our constitution that the State should be prohibited from obtaining goods and securing the necessary services to carry out the functions of government. Here the local Housing Authority is not attempting to loan, pledge or grant the funds, credit or property of the State to any person or persons or association, public or private, in contravention of the first paragraph of Article 4, Section 12 of our Constitution; all the local Housing Authority is doing is purchasing a policy of insurance, non-assessable in character, which insures the public property against loss of hazards by fire; there is no contingent liability upon Housing Authority, nor can any future assessment be levied against it for said insurance, and as a matter of fact, the insurance is being obtained at a much lower cost to Housing Authority from this mutual company than it can be obtained from any other company.

"Further than this, the purchase of a policy from a mutual insurance company does not constitute subscribing to the capital stock of any corporation or association

whatever, or for any private enterprise—in the first place, a mutual company issues no stock. It is true that the policy holders of a mutual company are members thereof and have certain voting rights, but they do not purchase, or own, stock in the company as such. Counsel for defendant Housing Authority cites Cooley's Briefs on the Law of Insurance Vol. 1, p. 69 2d Ed. to the effect that the members and stockholders of a mutual insurance company are identical, but I note that Cooley's Constitutional Limitations Vol. 1, p. 469 further states 'by becoming a member of a mutual insurance company a municipality does not become the owner of any stock or bonds of the company, in violation of a constitutional provision prohibiting any municipality from owning any stock or bonds of any association or corporation; and by giving premium notes for the payment of assessments to meet losses incurred by such an insurance company, the municipality does not loan its credit to the company in violation of a constitutional provision against doing so.' Counsel for defendants further rely on the case of Wermuth v. Minden Lumber Co., 129 La. 912, 57 So. 170, wherein mutual insurance companies were classified as corporations, and that the members of the corporation managed its affairs, and the case of Union Mutual Fire Insurance Co. of Cincinnati, Ohio v. Standard Guano & Chemical Mfg. Co., 7 Orleans App. 485, wherein the Court held for all intents and purposes members of a mutual insurance company are stockholders. I note in the Wermuth case Supra the plaintiff was the liquidator of the insurance company, and in the petition this mutual insurance company was designated as a corporation, and the Court in referring to it as a corporation pointed out that the liquidator had so designated it. The liquidator was seeking in that case to recover refunds on premiums paid to the defendant, contending that the defendant's employees had paid the premiums and that the defendant was not the insured and was not a member of the company and entitled to the dividends. Although the Court held that the defendant was a member of the mutual company and entitled to receive the refund of the premium, nowhere in the opinion did the Court refer to the defendant as a stockholder of the insurance company as a result of its membership. The Union Mutual Fire Insurance Co. Cincinnati, Ohio case, Supra, was a suit by a trustee of a mutual insurance company in liquidation to force the payment of an assessment of policy of mutual insurance issued to the defendant—the only question before the Court in that case was whether the defendant, a member of a mutual company, was liable for the assessment provided by the contract of insurance. The Court held that the policy holder was liable for the assessment under the terms of the contract; the Court did not hold a stockholder and a member were one and the same thing,

and, at any rate, if it could be said that a member and a stockholder were identical, such holding was not necessary to a decision in the case. At any rate, this is not a Supreme Court decision and I do not feel bound by it. As a practical matter, I am of the opinion that a member of a mutual insurance company and a stockholder are not identical. A stockholder obtains shares of stock which are transferrable by him, while a member of a mutual insurance company obtains no shares, all that he obtains is the policy of insurance which is not transferrable, except with the written permission of the company. Defendant further contends that the purchase of mutual insurance by the Housing Authority would constitute an assumption by it of the liabilities of a private corporation, or association, in violation of the Constitution. As heretofore pointed out, the premium for the insurance was fixed at a specified amount and the policy non-assessable. Under these circumstances Housing Authority herein is assuming no liabilities of Liberty Mutual Fire Insurance Company, it simply purchased the insurance for a fixed monetary consideration for a fixed period of one year and no assessments could be levied against it, and it thereby assumed no liabilities in connection with Liberty Mutual Fire Insurance Company.

"It is contended by Counsel for defendant that should the local Housing Authority purchase mutual insurance said Authority would thereby be undertaking to carry on the business of a private corporation, or association, or become a part owner therein, in violation of the Constitution of Louisiana. I note the last, or fourth prohibition, in Article 4, Section 12 is directed at the State, to the effect that it shall not undertake to carry on the business of any such corporation, or association, or become a part owner therein. In other words, this provision is limited to the State alone, while the other prohibitions are directed at the State or any political corporation. While it is true that the policyholders of a mutual company are members of said company, and have the right to vote for a board of directors, they do not actually carry on the business of the corporation, nor are they a part owner therein. The business of the company is carried on by the Board of Directors and the policyholders are not part owners but are simply entitled to a rebate on the premium provided the experience of the company justified is. Admitting that being entitled to a rebate on the premium constitutes a dividend and sharing in the profits of the company, yet, being a part owner of a company contemplates something more than being entitled to a dividend or sharing in the profits, viz liability for the losses of the company. Thus, as in the present case where the policy is a non-assessable one, then there can be no liability for losses on the part of the company, and consequently, the policy holder is not a part owner of the company.

"I consider it pertinent to observe that eleven States, whose Constitutions are very similar to our own and were enacted for the same purpose, have held that the prohibitions in their constitutions did not preclude the State, or its political subdivisions, insuring their property in a mutual insurance company. Louisville Board of Ins. Agents v. Jefferson County [etc.], 309 S.W. 2d 40 (Ky.); McMahon v. Cooney, 95 Mont. 138, 25 P.2d 131, Clifton v. School Dist. No. 14 [Russellville], 192 Ark. 140, 90 S.W.2d 508; Miller v. Johnson, 4 Cal.2d 265, 48 P.2d 956; Fuller v. Lockhart, 209 N.C. 61, 182 S.E. 733; Burton v. School Dist. No. 19, 47 Wyo. 462, 38 P.2d 610, City of Macon v. Benson, 175 Ga. 502, 166 S.E. 26; Downing v. School Dist. of City of Erie, 297 Pa. 474, 147 A. 239; Johnson v. School Dist. No. 1 of Multnomah County, 128 Or. 9, 270 P. 764, 273 P. 386, rehearing denied, 128 Or. 18, 273 P. 386; French v. Mayor of City of Millville, 66 N.J.L. 392, 49 A. 465, aff'd, 67 N.J.L. 349, 51 A. 1109 (1902), and State of Ariz. v. Northwestern Mutual Ins. Co., No. 6400, 66 Ariz. 50, 340 P.2d 200, but attached to and forming a part of the petitioner's brief.

"While it is true that the decisions from the commonlaw states are not necessarily controlling in this State, yet when the constitutional limitation in each State was enacted for the purpose of correcting the same evil that existed in the commonlaw states as existed in our own State, then I consider that much weight under the circumstances should be accorded these common-law decisions. In the case of Lewis v. Independent School Dist. v. City of Austin, 139 Tex. 83, 161 S.W.2d 450, a contrary view was taken, with which I do not agree. Counsel for defendant sets forth in brief that the Attorneys General of Louisiana have applied Article 4, Section 12 of the Constitution to the purchase of mutual insurance and filed in the record an opinion rendered by Honorable Eugene Stanley, Attorney General, on July 29, 1943, and published in 'Opinions of the Attorney General' 1942–1944 P. 642. It is true in this opinion that the Attorney General stated that he did not think it made any difference whether the assessment liability was fixed or not, however, I note in 'Opinions of the Attorney General' of June 14, 1934, 1934–1936, p. 547, it was stated that there was no constitutional prohibition of the State and its political subdivisions entering into contracts of mutual insurance if the contracts of insurance were for a fixed definite and determined premium consideration. To this same effect were three other opinions of the Attorney General's office where the policies issued were non-assessable. (Opinions of the Attorney General 1940–1942, pages 1568–1571) dated December 15, 1941, December 19, 1941, and December 20, 1941. Thus, in the absence of jurisprudence on this proposition, the Attorneys General of this State have given

their opinion as to whether the State in purchasing mutual insurance where the policy is non-assessable, have violated the prohibitions contained in Article 4, Section 12 of our Constitution. Four of them have stated that the purchasing of such insurance by the State, or its political subdivisions, is not in violation of the provisions of Article 4, Section 12 of the Constitution, while only one of them has stated that it does.

"As I am of the opinion that the securing of this non-assessable policy of insurance by Housing Authority does not violate the provisions of Article 4, Section 12 of the Louisiana Constit·ition, for the reasons heretofore stated, I will sign a judgment when presented to me, declaring that the Housing Authority of the City of Bogalusa is required by its contract with the Public Housing Administration to award the contract for fire and extended coverage insurance on projects La–24–1 and La–24–2 to the lowest responsible bidder, which I determine to be the Liberty Mutual Fire Insurance Company, and that the purchase of such insurance from the Liberty Mutual Fire Insurance Company is not prohibited by the constitution and laws of the State of Louisiana."

SANDERS, Justice (dissenting).

The sole question for decision in this case is the constitutionality of LSA–R.S. 40:474

(11) insofar as it authorizes a housing authority to insure its property with mutual insurance companies. This statute is attacked on the ground that it is violative of Section 12 of Article IV of the Louisiana Constitution. The assailed statute reads as follows:

"An authority * * * may:

* * * * * *

"Insure or provide for the insurance in stock or mutual companies of any movable or immovable property or any operations of the authority against any risks it thinks advisable to insure against * * *."

The district court sustained the statute. On appeal the Court of Appeal struck it down.

The parties concede that the policy in the instant case is a single-premium, non-assessable fire and extended coverage insurance policy. Under such a contract the cost of the protection is fixed, and no liability for assessment exists. The holder is not subject to any contingent liability. As an incident of the insurance, the holder becomes a member of the company, entitled to receive dividends.

Under familiar principles of constitutional law, the validity of a statute is presumed, and it is the duty of the court to uphold it unless it clearly violates a particular constitutional provision. A court should not

lightly brush aside a solemn expression of the legislative will.[1]

In State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430, 432, this Court stated:

"* * * the Legislature exercises the entire legislative power of the state, except in so far as some limitation has been imposed by the state Constitution, and that, therefore, for successfully assailing the constitutionality of any statute, it is necessary to point out some particular provision of the Constitution which has taken away from the Legislature the power to pass it. We will observe, further, that every doubt must be resolved in favor of the statute. The Legislature is, of necessity, in the first instance to be the judge of its own constitutional powers. Their manifest duty is never to exercise a power of doubtful constitutionality. Doubt in their case, as in that of the court, should be conclusive against all affirmative action. If a court in such case were to annul the law while entertaining doubts upon the subject, it would present the absurdity of one department of the government overturning, in doubt, what another had established in settled conviction, and to make the dubious constructions of the judiciary outweigh the fixed conclusions of the General Assembly."

The majority opinion formulates the following basic statement of the constitutional law:

"* * * it matters not that the fourth clause of Section 12 of Article 4 applies only to the State, for *it neither adds nor detracts from the effectiveness of the manifest meaning and purpose of the first three clauses which, in sum, reprobate investment by any state agency in a private business.*" (Italics supplied)

Then, concluding that the purchase of an insurance policy in a mutual company is a subscription to its capital (or an investment), the decision is reached that the statute is unconstitutional.

I am unable to concur in this disposition of the case. The salient aspect of this approach is that no specific prohibition of the lengthy section of the Constitution is identified as the controlling premise. Rather, reliance is had upon the aggregate of three diverse clauses—in effect, an appeal to the "brooding spirit" of the Constitution. Moreover, the conclusion that the purchase of mutual insurance is an investment passes over the essential nature of the insurance transaction: a purchase of protection on

1. State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430; City of Shreveport v. Pedro, 170 La. 351, 127 So. 865; Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113; Olivedell Planting Co., Inc. v. Town of Lake Providence, 217 La. 621, 47 So.2d 23; State v. Rones. 223 La. 839, 67 So.2d 99.

public property against loss by fire and other hazards.

The constitutional provision must be interpreted in the light of the evils sought to be prohibited. The purpose of this section of the Louisiana Constitution, like similar provisions in the Constitutions of forty-three other states, was to prevent the state Legislature from using public funds to subsidize private speculative ventures such as banks, canals, and railroads in which there was risk of financial disaster to the state. It was never intended to deprive a political corporation, such as the Housing Authority, of the privilege of purchasing insurance from any insurance company.

That this was the purpose of this Section was recognized by this Court in the early case of Benedict v. City of New Orleans, 115 La. 645, 39 So. 792, wherein it said:

"What the Article aims at is the propensity which the state manifested in the past to join in enterprises of a quasi private character, and even of a wholly private character, such as banking. The article was never intended to hamper the government of the state in the performance of public duties * *. In conducting the ordinary business of the state, and availing itself to that end

of the means in its judgment most suitable, the Legislature of Louisiana is as free and untrammeled as that of any other state * * *."

With the history and purpose of this article in mind, I now proceed to examine each of its clauses.

*Clause one*: "The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private * * *."

As is evident from its language, this clause bans only the disposition of the funds, credit, or property of the state or of its political corporations to aid any person or any corporation, public or private. Morever, it has no application to a governmental transaction for which there is an adequate consideration.[2] Thus it does not apply to the payment by a political corporation of a premium for insurance on public property. The premium is the same for all insurance companies. The rate is fixed by the Louisiana Insurance Rating Commission, an agency of the state, and has general application.[3] The insurance protection in the policy is adequate consideration to a housing authority for the premium.

2. State v. Board of Com'rs of Port of New Orleans, 153 La. 664, 96 So. 510; City of New Orleans v. Disabled American Vets., 223 La. 363, 65 So.2d 796; People ex rel. Gutknecht v. City of Chicago, 414 Ill. 600, 111 N.E.2d 626; Clovis v. Southwestern Public Service Co., 49 N.M. 270, 161 P.2d 878, 161 A.L.R. 504; Bernstein v. City of Pittsburg, 366 Pa. 200, 77 A.2d 452. See also Rhyne, Municipal Law (1957), Sec. 15-3, p. 343.

3. See LSA-R.S. 22:1401-1405, 1421.

*Clause two*: " * * * nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association whatever, or for any private enterprise. * * * "

This clause prohibits the state or any of its political corporations from purchasing or subscribing to the stock of any corporation, association, or private enterprise. No basis is found here for striking with unconstitutionality a statute authorizing the purchase of insurance from a mutual company. Such a company has no stock. Although it confers membership in the company, the insurance policy is not stock. Nor does the Housing Authority become a stockholder.[4] In essence, it simply purchases insurance.

To support the view that a policyholder of a mutual company is a stockholder, the respondents rely upon Wermuth v. Minden Lumber Co., 129 La. 912, 57 So. 170 and Union Mutual Fire Ins. Co. of Cincinnati v. Standard Guano & Chemical Mfg. Co., 7 Orleans App. 485. In the Wermuth case I find no holding that a policyholder of a mutual insurance company is a stockholder. The Union Mutual Fire Ins. Co. case was a suit to collect assessments against the defendant under a policy made assessable by the laws of Ohio under which the mutual

company was incorporated. In disposing of an exception of no cause of action, the question was whether the Ohio law was applicable. Although reference is made to "a member or stockholder", I do not construe this Court of Appeal decision as holding that a member of a mutual company and a stockholder are identical. Nor was the question squarely presented.

*Clause three*: "Nor shall the State, nor any political corporation thereof, assume the liabilities of any political, municipal, parochial, private or other corporation or association whatsoever, except as otherwise provided in this Constitution * * * ."

Inasmuch as the policy here is nonassessable, the purchase of such a policy is not an assumption of the liabilities of a private corporation as contemplated by this clause. The purchaser of a non-assessable insurance contract simply purchases insurance protection for an agreed period at a fixed premium, and has no obligation to make any additional payment.

*Clause four*: " * * * nor shall the State undertake to carry on the business of any such corporation or association, or become a part owner therein * * * ."

This prohibition is not relied upon in the majority opinion. Nonetheless, I must

---

4. Hill v. Nautilus Insurance Company (N.Y.), 4 Sanford Ch. 577; Ross v. Knapp, Stout & Co., 77 Ill.App. 424; Miller v. Johnson, 4 Cal.2d 265, 48 P.2d 956; Louisville Board of Ins. Agents v. Jefferson County Board of Ed., 309 S.W.2d 40; Lawrence v. Schellstede, 348 P.2d 1078.

frankly state that, in my opinion, the district court was correct in concluding that it applied only to the state. The district court stated:

> "I note the last, or fourth prohibition, in Article 4, of Section 12, is directed at the State to the effect that it shall not undertake to carry on the business of any such corporation, or association, or become a part owner therein. In other words, the provision is limited to the State alone, while the other prohibitions are directed at the State or any political corporation."

In Stokes v. Harrison, 238 La. 343, 115 So.2d 373, 379 this Court quoted with approval the language of the Court of Appeal in reference to this and other sections:

> " 'A comparison of the language of Sections 2, 12 and 13 of this Article IV of the Constitution in this particular leaves it crystal clear that where the framers intended that the restriction or limitation should apply to the State only as a separate entity from its political subdivision, the word State alone was used, but where the limitation or restriction was intended to apply to the State and to all political subdivisions thereof, the intent was so spelled out in terms of "the State, or any political corporation thereof." * * * ' "

In an earlier case, New Orleans v. Graihle, 9 La.Ann. 561, this Court was pre-sented with the question of whether a provision of the 1845 Constitution prohibiting the "State" from purchasing stock in a private corporation applied to a municipal corporation. In holding that it did not, the Court ruled:

> "As the Constitution speaks of the State, which is a distinct corporate body, and of other corporate political bodies to be created, and the inhibition is applied to the former and not to the latter, it would be the exercise of arbitrary power in us thus to extend this Article of the Constitution, by construction, beyond its letter."

The conclusion that the purchase of an insurance policy in a mutual company is an "investment" is not, as I view it, a proper evaluation of the essential nature of the transaction. The payment for the insurance is not an assessment but a premium. No part of it pays for the membership in the company. As previously noted, the premium rates are fixed by a state agency and uniformly apply to all insurance companies.

There is no substantial difference between the policy of insurance issued by a capital stock company and a non-assessable policy issued by a mutual insurance company. In both instances the policyholder is purchasing a stated amount of insurance for a fixed premium. Admittedly, the premiums paid to the mutual company by its policyholders

form the fund from which the corporation pays losses, but this is likewise true of the premiums paid to capital stock companies. To this extent all insurance is mutual in nature:

> "All insurance is mutual in the sense that the premium contributed by all insureds provide the fund by which those who suffer losses are indemnified." [5]

The overwhelming weight of authority in other jurisdictions is that the purchase of a non-assessable, single-premium fire and extended coverage insurance policy from a mutual insurance company does not violate constitutional prohibitions similar to those under consideration.[6] Only one Supreme Court, that of Texas, has reached a contrary result.[7]

Generally, the text writers align themselves with the weight of the jurisprudence and support the view that the incidental rights of membership acquired by a governmental policyholder in the purchase of insurance in a mutual company do not violate the constitutional prohibitions.[8]

In my opinion, there is no adequate constitutional basis to invalidate the statute. Accordingly, it is my view that the judgment of the district court should be reinstated. I respectfully dissent.

5. Couch, Cyclopedia of Insurance Law (2nd Ed.) Vol. 1, § 1.79 (1959).

6. Arizona, State v. Northwestern Mutual Life Ins. Co., 86 Ariz. 50, 340 P.2d 200; Arkansas, Clifton v. School District No. 14 of Russellville, 192 Ark. 140, 90 S.W. 2d 508 (1936); California, Miller v. Johnson County Auditor, 4 Cal.2d 265, 48 P.2d 956 (1935); Kentucky, Louisville Board of Insurance Agents v. Jefferson County Board of Education, 309 S.W.2d 40 (1958); Montana, McMahon v. Cooney, 95 Mont. 138, 25 P.2d 131 (1933); New Jersey, French v. Mayor of City of Millville, 66 N.J.L. 392, 49 A. 465 (1901); North Carolina, Fuller v. Lockhart, 209 N.C. 61, 182 S.E. 733 (1935); Oklahoma, Huffman v. Schellstede, 348 P.2d 1078 (Okl.S.Ct.1960); Oregon. Johnson v. School District No. 1, of Multnomah County, 128 Or. 9, 270 P. 764 (1928); Pennsylvania, Downing v. School District of the City of Erie, 297 Pa. 474, 147 A. 239 (1929); Wyoming, Burton v. School District No. 19, 47 Wyo. 462, 38 P.2d 610 (1934).

7. See Lewis v. Independent Schol Dist. of City of Austin, 139 Tex. 83, 161 S.W. 2d 450.

8. I Cooley, Constitutional Limitations, p. 469; McQuillan on Municipal Corporations (3rd Ed.) Vol. 15, Sect. 39.30, p. 94; Rhyne, Municipal Law (1957), Sect. 15-3, p. 342; 152 A.L.R. 495, 513.