Dear Ms. Barron:
You have requested an opinion of the Attorney General, in your capacity as Executive Director of the Louisiana Health Insurance Association (Association) regarding the investment policies of the Association.
The Association was created pursuant to Act No. 131 of the 1990 Regular Session of the Louisiana Legislature, found at R.S.22:231, et seq. This legislation established a mechanism to insure the availability of health and accident insurance coverage to those citizens of this state, who, because of health conditions, cannot secure such coverage from other sources. See R.S. 22:231.
R.S. 22:233 provides for the creation of the Association:
 "There is hereby created a nonprofit entity to be known as the `Louisiana Health Insurance Association'. The Association shall perform its functions under a plan of operation established and approved under R.S. 22:235 and shall exercise its powers through a Board of Directors established under R.S. 22:234."
R.S. 22:235 requires the Board of Directors of the Association to submit a plan of operation to the Commissioner of Insurance for approval. Section 235 (C) provides, in pertinent part, the following:
"(C) In its plan of operation the Board shall:
 (1) Establish procedures for the handling and accounting of assets and monies of the association.
* * *
 (5) Establish such other procedures for the operation of the Association to effectuate the purposes of this Part as the board in its discretion deems necessary and proper."
The powers and duties of the Association are set forth in R.S.22:236 which provides, in pertinent part, the following:
 "The association shall have the general powers and authority granted under the laws of this State to insurance companies licensed to provide health and accident insurance. . ."
Funding for the Association is comprised of state appropriation, mandated service charges and premiums paid by individual policyholders. The patient service charge provided for in Section 239 is based on daily charges of $2.00 for hospital admissions and $1.00 for outpatient surgeries.
You state that the Association is currently adhering to the investment policies established by law for state agencies, boards and commissions, including the provision in Article VII, Section 14 (A) which prohibits the state and political subdivisions thereof from the subscription or purchase of "the stock of a corporation or association or for any private enterprise." You specifically ask whether this constitutional prohibition is applicable to investments made by the Association.
As previously noted, the Association, while not a state agency or political subdivision, clearly constitutes a quasi-public entity created for the public purpose enumerated in Section 231. In addition, Section 234 subjects the Association with certain exceptions, to the Open Meeting and Public Records Laws, as well as audit by the Legislative Auditor under R.S. 24:513. As noted above, it receives public funding from state appropriation and service charges, as well as non-public funding generated from premium payments by policy holders.
In Public Housing Administration v. Housing Authority of The Cityof Bogolusa, et al., 242 La. 519, 137 So.2d 315 (1962) rehearing denied, our Supreme Court held that local housing authorities constitute public corporations, and could not use public funds to purchase fire and extended coverage insurance in a mutual insurance company, as such would constitute and unconstitutional subscription or purchase of capital. We find this decision to be germane to the issue presented in your request.
The Association, while not a political subdivision of the state, is nevertheless a quasi-public nonprofit corporate entity. It, like a housing authority, is funded, in part, with state/public funds. Under the Public Housing Administration decision, these public funds may not be invested in contravention of Article VII, Section 14 (A).
We also draw attention to Louisiana State Employee's RetirementSystem, et al. v. State of Louisiana through the Department ofJustice, et al., 423 So.2d 73 (La.App. 1st Cir. 1982) writ denied, wherein the Court distinguishes between the investment of public and private funds. Thus, while the constitutional prohibition limiting the investment of state/public funds would apply to the funds received by the Association via state appropriation and statutory service charges, it would not apply so as to limit the investment of the non-public premiums paid by policyholders. In accord is Attorney General Opinion No. 93-455.
As previously discussed, under R.S. 22:236 the Association possesses the general powers and authority granted under the laws of this state to insurance companies. R.S. 22:841 et seq., comprise the statutory provisions relating to investments by domestic insurers. The Association may wish to consider these provisions in making its investment decisions.
Finally, we recommend that the Association's investment policies be reflected in its plan of operation and procedures for the handling and accounting of assets and monies pursuant to R.S.22:235.
Trusting this adequately responds to your inquiries, I remain
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH/tp